IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| CRISTIAN MARTINEZ and PAUL ESTRADA, Individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ANDERSON COUNTY, *et al.*<br><br>Defendants. | § § § § § § § § § § § § §  CASE NO. 6:22-cv-171-JCB-KNM<br><br>LEAD CASE |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Before the Court is Plaintiffs' Renewed Motion for Class Certification (ECF 22), Defendants' Joint Response in Opposition to Plaintiffs' Renewed Motion for Class Certification (ECF 67), Plaintiffs' Reply ISO Renewed Motion for Class Certification (ECF 68) and Defendants' Joint Sur-Reply in Opposition to Plaintiffs' Renewed Motion for Class Certification (ECF 69). Having considered the parties' briefing and oral arguments, and for the reasons stated herein, it is recommended that the motion be **GRANTED** as modified.

**BACKGROUND**

Plaintiffs initiated this action against Defendants Anderson County and Karina Garcia in her official capacity as the Anderson County Bond Supervision Officer. Plaintiffs challenge pre-trial, pre-conviction, non-refundable fees assessed in criminal cases in Anderson County, Texas, including bond supervision and urinalysis fees, and pretrial questionnaires. The case is consolidated with an earlier filed action – *Perkins v. Anderson County, Texas*, Civil Action No. 6:20-cv-76-JCB-KNM.

Plaintiffs complain that pre-trial arrestees are required to pay a $50.00 per month bond supervision fee and $20 for each urinalysis test without consideration of the ability to pay. Plaintiffs assert eight claims pursuant to 42 U.S.C. § 1983: (1) violation of due process regarding deprivation of property interest in bond supervision fee amount; (2) violation of procedural due process for arbitrary bail; (3) violation of procedural due process for financial conflict of interest; (4) violation of procedural due process regarding ability to pay; (5) violation of procedural due process regarding revocation for non-payment of bond fee; (6) violation of equal protection for wealth-based discrimination; (7) violation of due process and equal protection regarding urinalysis; and (8) violation of right to privacy. Plaintiffs allege that they are subject to incarceration if they fail to pay the fees.

The motion for class certification identifies four classes for which they seek certification: (1) Main Damages Class: All persons who are or have been on pre-trial bond supervision in Anderson County and charged bond supervision and/or urinalysis fees; (2) Indigent Damages Subclass: All indigent persons who are or have been on pre-trial bond supervision in Anderson County and charged bond supervision and/or urinalysis fees; (3) Main Injunctive Class: All persons who are or will be on pre-trial bond supervision in Anderson County and charged bond supervision and/or urinalysis fees; and (4) Indigent Injunctive Subclass: All persons who are or will be on pre-trial bond supervision in Anderson County and charged bond supervision and/or urinalysis fees.[1] Plaintiffs Paul Estrada and Edward Leroy Perkins seek to serve as the class representatives for all four classes. Plaintiffs assert that a class action is the only economical,

---

[1] The complaint identifies the indigent injunctive subclass as "[a]ll persons who are or have been on pre-trial bond supervision in Anderson County and charged bond supervision and/or urinalysis fees." Plaintiffs' Renewed Motion for Class Certification, ECF 22, at *8. Presumably, Plaintiffs intended the subclass to be all who "are or will be" on bond supervision, as with the main injunctive class, since it is intended to provide prospective injunctive relief.

reasonable method of addressing Defendants' allegedly unlawful collection scheme on behalf of hundreds of individuals who lack the ability to bring individual cases.

## APPLICABLE LAW

To obtain class certification, "parties must satisfy [Federal Rule of Civil Procedure] 23(a)'s four threshold requirements, as well as the requirements of Rule 23(b)(1), (2), or (3)." *Ludlow v. BP, P.L.C.*, 800 F.3d 674, 682 (5th Cir. 2015). Rule 23(a) requires that: (1) the class be so numerous that joinder of all members is impracticable (numerosity); (2) there be questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties be typical of the claims or defenses of the class (typicality); and (4) the representative parties fairly and adequately protect the interests of the class (adequacy). Fed. R. Civ. P. 23(a).

Plaintiffs seek Rule 23(b)(2) and (b)(3) class certifications. Class certification under Rule 23(b)(2) is for actions seeking declaratory or injunctive relief where "the party opposing the class has acted or refused to act on grounds generally applicable to the class." FED. R. CIV. P. 23(b)(2). "To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must 'predominate over any questions affecting only individual members' [predominance]; and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy [superiority].'" *Amchem Prods., Inc. v. Windsor*, 521 US 591, 615 (1997) (citing FED. R. CIV. P. 23(b)(3)). The predominance requirement, although reminiscent of the commonality requirement of Rule 23(a), is "far more demanding because it tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir. 2005) (internal quotations omitted). The predominance inquiry requires courts to "consider how a trial on the merits would be conducted if a class were certified." *Funeral Consumers Alliance, Inc. v.*

3

*Serv. Corp. Int'l*, 695 F.3d 330, 348 (5th Cir. 2012) (citing *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003)). To determine whether questions of law or fact common to class members predominate, the court must look to the elements of the underlying cause of action. *Id.* (citing *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011)("*Halliburton I*")).

The party seeking certification bears the burden of proof that the proposed class meets all requirements of Rule 23. *Castano v. American Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996). "The class certification determination rests within the sound discretion of the trial court." *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir. 2005). A court that certifies a class must "define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)." FED. R. CIV. P. 23(c)(1).

## **ANALYSIS**

Plaintiffs seek to break the classes into four groups—a main damages class, an indigent damages subclass, a main injunctive class and an indigent injunctive subclass. The main classes are defined in a way that encompasses the members of the proposed indigent subclasses.[2] All members of the proposed indigent subclasses are also members of the proposed main classes. Plaintiffs consistently complain throughout the complaint that the fees are charged prior to conviction, without consideration of an ability to pay and with a threat of incarceration for non-compliance. These allegations are as applicable to the main classes as they are to the indigent ones. As a result, the subclasses are unnecessary.

There is also overlap between the proposed damages class and injunctive class. Both proposed main classes include all persons who are on pre-trial bond supervision in Anderson County and charged bond supervision and/or urinalysis fees. The difference between the main

---

[2] At the hearing, Plaintiffs acknowledged that, "if the main classes are certified, that subsumes the indigent subclasses." Transcript of Motion Hearing, ECF 74, at *13.

damages class and the main injunctive class is that the main damages class includes those who "have been" charged fees in the past and the injunctive class seeks prospective injunctive relief for those who "will be" charged fees in the future. The Court will first evaluate whether Plaintiffs have met the Rule 23(a) requirements and then consider Rule 23(b).

### I. Rule 23(a) Requirements:

#### 1. *Numerosity*

The numerosity prerequisite is met when the size of the proposed class is large enough that joinder of all members is impracticable. FED. R. CIV. P. 23(a)(1). The critical inquiry is not simply the number of members of a putative class, but whether joinder of those members is impracticable. *Ziedman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981); *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999).

Plaintiffs estimate that there were approximately 300 bond supervision cases over the two years spanning 2020 and 2021. The Fifth Circuit has typically found the numerosity prerequisite met when the class has 100-150 members. *Mullen*, 186 F.3d at 624 ("the size of the class in this case—100 to 150 members—is within the range that generally satisfies the numerosity requirement"). Defendants do not dispute that there are numerous potential class members. Instead, Defendants argue that Plaintiffs have not shown that joinder is impracticable.

Defendants assert that the members of the purported class are easily identifiable and likely to be geographically located in or around Anderson County, facilitating joinder instead of a class. Geographical dispersion of potential class members is a consideration in determining whether joinder is impracticable. *Ziedman*, 651 F.2d at 1038. Another factor, however, is whether individuals are likely to pursue their individual claims. *Id.* Plaintiffs argue that individuals are not likely to pursue their own claims because of the power imbalance between criminal case

5

defendants and the county, as well as the relatively small size of each individual claim.[3] Fear of retaliation can discourage individual claims. *Mullen*, 186 F.3d at 625. Similarly, potentially small recoveries may play a role. As noted by the Seventh Circuit, and recounted by the Supreme Court in *Amchem*:

> "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."

*Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997). Here, the size of the class, the power imbalance between the parties and the relatively small potential individual recovery support a finding that joinder would be impracticable.

### 2. *Commonality*

To satisfy the commonality requirement, Plaintiffs must show that there are questions of law or fact common to the class. FED. R. CIV. P. 23(a)(2). *See also James v. City of Dallas,* 254 F.3d 551, 570 (5th Cir. 2001), *cert. denied,* 534 U.S. 1113, (2002). "The commonality test is met when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1997). "[T]he threshold for commonality is not high." *Simms v. Jones*, 296 F.R.D. 485, 497 (N.D. Tex. July 9, 2013) (citing *Jenkins v. Raymark Industries, Inc.*, 782 F2d 468, 472 (5th Cir. 1986)). Even one common question is sufficient for a finding of commonality. *Wal-Mart Stores Inc. v. Dukes*, 564 U.S. 338, 359 (2011).

Plaintiffs challenge standard fees and questionnaires applicable to criminal defendants who are placed on pretrial bond supervision in Anderson County. All potential damages class members

---

[3] *Id.* at *4.

have been or are subjected to bond supervision and/or urinalysis fees. All potential injunctive class members are or will be subjected to those fees. All potential class members are allegedly exposed to those fees and questionnaires prior to a conviction and without consideration of the ability to pay, with those fees allegedly being used to pay the salary and expenses of the bond supervision office. All potential class members assert that the imposition of these fees, as assessed, is unconstitutional.

Defendants argue that not all class members have suffered the same injury because some class members may have had their pretrial supervision revoked for nonpayment and some have not. Although the damages may not be the same for all class members, Plaintiffs have shown multiple common factual and legal issues. As stated above, the threshold for commonality is not high. Plaintiffs have shown at least one common issue among all class members.

3. *Typicality*

"Like commonality, the test for typicality is not demanding." *James*, 254 F.3d at 571. "The critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *Id.*

Here, the course of conduct Plaintiffs allege against Defendants—charging pre-conviction bond supervision and urinalysis fees without consideration of the ability to pay with a threat of incarceration for nonpayment—is the same for the purported class representatives, Estrada and Perkins, and the class members. Similarly, the relief sought by the purported class representatives—recoupment of fees that have been paid, declaratory relief and injunctive relief—is the same as the potential class members.[4] All potential class members, including the class

---

[4] It is noted that Defendants point to deposition testimony by Perkins where he states he is not seeking a refund of his fees. His pleading in his original lawsuit, however, seeks to recover "[a]ll sums paid to the Anderson County

representatives, assert the unconstitutionality of the pretrial bond supervision and urinalysis fee collection system.

Defendants argue that Perkins' claims in his lawsuit, filed prior to consolidation, did not assert claims concerning urinalysis fees, financial conflict of interest, wealth-based discrimination or privacy rights. Plaintiffs respond that, upon consolidation, Perkins assumed and joined in the claims asserted in the consolidated case as his own. Here, the consolidation order consolidated the cases "for all purposes."[5] The claims of the class representatives are typical of the claims of the class. As a result, Plaintiffs have satisfied the typicality requirement.

4. *Adequacy of Representation*

The adequacy inquiry under Rule 23(a)(4) encompasses the class representatives, their counsel, and the relationship between the two. *Stirman v. Exxon Corp.*, 280 F.3d 554, 563 (5th Cir. 2002). It "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 US at 625. "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 625–26 (internal quotations omitted). Estrada and Perkins are part of the putative class. Like the members of the putative classes, Estrada and Perkins have been or are currently being subjected to the pretrial bond supervision assessment of fees.

Defendants argue that the deposition testimony of Estrada and Perkins show that they are not adequate representatives and that they have not been in contact with other class members. Defendants point to deposition excerpts where they were not able to adequately articulate the legal claims asserted in the case or the relief being sought, as well as times where they deferred to their

---

Bond Supervision Office." Plaintiff's Original Class Action Complaint, Civil Action No. 6:20-cv-76-JCB-KNM, ECF 1, at *8.
[5] *See* Order of Consolidation, ECF 15, at *5.

attorneys' expertise. The fact that a lay person cannot specifically categorize his claims and injuries into legal terminology, however, does not mean that he is an inadequate representative. Adequacy of representation asks whether the representative is willing and able to "take an active role in and control the litigation and [] protect the interests of absentees." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001). In his deposition, Estrada identified his role as class representative as "to represent all the people that are placed on bond supervision" and "speaking up for everybody."[6] Similarly, Perkins testified that he hopes the lawsuit "helps a lot of people," and that he's requesting that the class members do not pay the fees in the future or receive repayment on fees paid in the past.[7] Both class representatives are pursuing these claims on behalf of the class while they themselves are currently subject to the challenged pretrial bond supervision assessments. The fact that class representatives believe their attorneys are knowledgeable and defer legal questions to their attorneys does not make their representation inadequate.

Defendants additionally argue that there are potential conflicts of interest between the class representatives and the class members because some individuals on bond supervision may find the bond supervision office helpful and see a benefit to defraying the costs associated with supervision and urinalysis testing by charging fees. Plaintiffs deny that they are challenging the existence of the bond office or bond supervision. Instead, the issues presented here concern the constitutionality of the manner in which fees are assessed. "Differences between named plaintiffs and class members render the named plaintiffs inadequate representatives only where those differences create conflicts between the named plaintiffs' and the class members' interests." *Berger*, 257 F.3d at 480. Defendants have not identified a conflict. Plaintiffs sufficiently

---

[6] Defendants' Joint Response in Opposition to Plaintiffs' Renewed Motion for Class Certification, ECF 67-1 (Ex. 1), at *6–7.
[7] Id., ECF 67-2 (Ex. 2), at *13–14.

established that Estrada and Perkins are adequate class representatives. Defendants did not challenge the adequacy of counsel.[8] Counsel for Plaintiffs have exhibited zealous and competent representation in this matter. *Id.* at 479. The class representatives and counsel are adequate.

## II.   Rule 23(b)(2) Requirements

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem*, 521 U.S. at 614, 117 S.Ct. at 2245. Plaintiffs seek certification for the injunctive class under Rule 23(b)(2). Rule 23(b)(2) provides for class treatment when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

In contrast to the commonality inquiry, which looks for common issues, the Rule 23(b)(2) analysis requires "common behavior by the defendant toward the class." *In re Rodriguez*, 695 F.3d 360, 365 (5th Cir. 2012) (quoting *Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n*, 624 F.3d 185, 198 (5th Cir. 2010)). "[C]lass members must have been harmed in essentially the same way." *Maldonado v. Ochsner Clinic Foundation*, 493 F.3d 521, 524 (5th Cir. 2007). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart Stores, Inc.*, 564 U.S. at 360, 131 S.Ct. at 2257.

Here, Plaintiffs seek declaratory and injunctive relief against the collection of pre-conviction supervision and urinalysis fees without consideration of the ability to pay and the use of certain questions in bond office questionnaires.[9] The complaint challenges specific questions

---

[8] *Id.*, ECF 67, at *12–18.
[9] Plaintiffs' Renewed Motion for Class Certification, ECF 22, at *16.

in the questionnaires that Plaintiffs allege are an invasion of privacy.[10] In response to the motion for class certification, Defendants mischaracterize the relief sought and assert that Plaintiffs are seeking to prohibit the collection of any fees and the blanket use of questionnaires, which would disserve the public interest and dismantle the bond supervision office.[11] The manner in which the fees are assessed and propriety of the questions asked in the questionnaires are either unconstitutional as to all members of the class or none. Plaintiffs have satisfied Rule 23(b)(2)'s requirements for the injunctive class.

### III. Rule 23(b)(3) Requirements:

Plaintiffs also seek certification for the damages class under Rule 23(b)(3). Rule 23(b)(3) has two requirements: (1) that common questions of law or fact predominate over individual questions (predominance); and (2) that a class action is the superior method to adjudicate this dispute (superiority).

***Predominance***

Predominance, although "reminiscent of the commonality requirement of Rule 23(a), is far more demanding because it tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Unger*, 401 F.3d at 320 (internal quotations omitted). The Court must consider "how a trial on the merits would be conducted if a class were certified." *Gene and Gene LLC v. BioPay LLC*, 541 F.3d 318, 326 (5th Cir. 2008); *Bell Atl. Corp.*, 339 F.3d at 302. This requires the Court to identify the substantive issues that will control the outcome of the case and which issues will predominate and thus must be determined on a class-wide basis. *Gene and Gene*, 541 F.3d at 326. The Court must then determine whether those issues can be determined on a class-wide basis, or whether they turn on individual facts. *Id.* at 327.

---

[10] Class Action Complaint, ECF 1, at *17–18.
[11] Defendants' Joint Response in Opposition to Plaintiffs' Renewed Motion for Class Certification, ECF 67, at *20.

Plaintiffs assert that the challenged practices and policies are equally applicable to all supervisees, and therefore all members of the class. Plaintiffs submit that the only individual question among the class members is the amount of each member's damages, due to the varying length of supervision of each member and the amount of fees collected.

Defendants argue that the due process claims will require individualized analysis of the criminal case for each class member to determine whether the individual challenged the fees as a condition of bond or agreed to payment of fees as a bond condition. Similarly, Defendants contend that the damages analysis will require complex calculations and individualized evidence based on whether each individual was sent to jail for nonpayment or had a driver's license suspended.

In response to Defendants' assertion that individualized due process analyses will be required for each class member, Plaintiffs submit that they "challenge fees and intake forms that are not court ordered and that are imposed without due process."[12] There is no need to evaluate whether each class member challenged the imposition of the fees or signed an agreement to pay fees as a bond condition. These questions do not relate to whether fees were assessed without consideration of the ability to pay. At the hearing, Plaintiffs also clarified that they are only seeking monetary damages for fees paid during the relevant time period.[13] Plaintiffs are not seeking the individualized damages alluded to by Defendants that would arise out of revocation or license suspension. Here, Plaintiffs all seek damages and claim the same injury from the same pre-trial bond supervision assessment of fees. If Plaintiffs succeed on their claims, the damages calculation will only entail an analysis of fees that have been paid during the relevant time period.[14] Plaintiffs have established predominance.

---

[12] Plaintiffs' Reply ISO Renewed Motion for Class Certification, ECF 68, at *12.
[13] Transcript of Motion Hearing, ECF 74, at *27.
[14] Plaintiffs identify the relevant time period as fees paid on or after February 14, 2018, two years after Perkins filed his complaint.

*Superiority*

Finally, Plaintiffs assert that a class action is superior to individual lawsuits. Plaintiffs submit that a class will provide efficiency and conserve resources for claims that are for relatively small damage amounts per class member. Plaintiffs contend that a collective action is in the best interests of the class members who are unlikely to pursue claims on their own and it will be more manageable than individual cases. In response, Defendants argue that Plaintiffs have not shown superiority because they have not shown predominance.[15]

As noted above, Plaintiffs have shown predominance. In addition, Plaintiffs identified several reasons why a class is superior to individual actions and will provide a fair and efficient adjudication of the claims. "The purpose of class actions is to conserve 'the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion.'" *Jenkins v. Raymark Industries, Inc*., 782 F.2d 468, 471 (5th Cir. 1986) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 701, 99 S.Ct. 2545, 2557 (1979)). Plaintiffs have shown superiority.

## Conclusion

The proposed indigent subclasses are included in the proposed main classes and are unnecessary. The proposed classes should be modified to include the two main classes—the main damages class and the main injunctive class—and eliminate the subclasses. For the reasons above, Plaintiffs met the requirements of Rule 23(a), (b)(2) and (b)(3) for these two classes.

## **RECOMMENDATION**

It is accordingly recommended that Plaintifff' Renewed Motion for Class Certification (ECF 22) be granted as modified.

---

[15] Defendants' Joint Response in Opposition to Plaintiffs' Renewed Motion for Class Certification, ECF 67, at *26–27.

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b).

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report shall bar that party from *de novo* review by the district judge of those findings, conclusions, and recommendations, and except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc), *superseded by statute on other grounds*; 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 1st day of March, 2023.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE